UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
AMICA MUTUAL INSURANCE COMPANY,

Plaintiff,

-against-

JOANN AMBROSIO and
DONALD AMBROSIO,

Defendants.
----------------------------------------------------------------X

**MEMORANDUM**
**AND OPINION**
CV 25-3296 (AYS)

**SHIELDS, Magistrate Judge:**

This is a declaratory judgment action commenced by Plaintiff, Amica Mutual Insurance Company ("Plaintiff" or the "Amica"), against Defendants Donald Ambrosio ("Donald") and Joann Ambrosio ("Joann") (collectively, "Defendants" or "the Ambrosios"). Amica seeks a declaration of its rights and responsibilities under Homeowners and Personal Umbrella Liability policies of insurance. Presently before the Court is Amica's motion for summary judgment, seeking a declaration that it has neither a duty to defend nor indemnify Donald in connection with a pending state court action brought against him by his now ex-wife, Joann. For the reasons set forth below, the motion is granted.

## BACKGROUND

### I. Basis of the Facts

Facts forming the basis of decisions on motions for summary judgment are meant to be derived from the parties' competing statements of material fact, submitted pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Rule 56.1"). These statements "streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without

guidance from the parties." Holtz v. Rockefeller & Co., 258 F.3d 62, 74 (2d Cir. 2001). The Second Circuit has emphasized that adherence to Rule 56.1 is mandatory. See Monahan v. New York City Dep't of Corr., 214 F.3d 275, 292 (2d Cir. 2000) ("In the Southern and Eastern Districts of New York, a party opposing a motion for summary judgment shall file a short and concise statement of the material facts in dispute accompanied by citation to evidence which would be admissible.") (emphasis in original).

The party seeking summary judgment must establish in its Rule 56.1 statement that there are no disputed issues of material fact. Each statement of fact, set forth in properly numbered paragraphs, must be supported by admissible evidence cited from the record. Thereafter, it is for the non-moving party to set forth in their response specific facts showing that there is a genuine issue for trial. See Woodman v. WWOR-TV, Inc., 411 F.3d 69, 75 (2d Cir. 2005). Conclusory denials of an opposing party's statement of facts that do not make record citations to admissible evidence are disregarded, and do not create the required issue of fact necessary to defeat summary judgment. See Rodriguez v. Schneider, No. 95 CIV. 4083, 1999 WL 459813, at *1 n.3 (S.D.N.Y. 1999). Furthermore, failure to properly controvert numbered statements results in such statements being "deemed admitted." Loc. Civ. R. 56.1(c).

When evaluating Rule 56.1 statements, the court does not consider hearsay, speculation, or inadmissible evidence. See Pacenza v. IBM Corp., 363 Fed. App'x 128, 130 (2d Cir. 2010). Nor does the Court weigh the evidence or assess witness credibility. See Taveras v. HRV Mgmt., Inc., No. 17-CV-5211, 2020 WL 1501777, at *2 (E.D.N.Y. Mar. 24, 2020) (citing United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994)). Importantly, legal arguments are not appropriately made or considered when reviewing Rule 56.1 statements. See Taveras, 2020 WL 1501777, at *2 (citing cases). Instead, the Court considers Rule 56.1 statements only to determine whether

material issues of evidence-based fact exist. See id. Where such facts exist, summary judgment may not be granted.

II. The Parties' Rule 56.1 Statements

Amica has submitted a Rule 56.1 Statement consisting of thirty-two paragraphs. Each paragraph, which details the policies of insurance issued to the Ambrosios as well as relevant background information, is properly brought before the Court by way of declarations of individuals with knowledge attaching documentary record evidence. Thus, Amica submits the declarations of Stephanie A. Paradis, a Senior Large Loss Specialist for Amica, see Declaration of Stephanie A. Paradis submitted in support of motion for Summary Judgment, Docket Entry ("DE") [28-1] (the "Paradis Declaration") and that of Nahla Ahmed, Amica's Assistant Vice President, see Declaration of Naha Ahmed submitted in support of motion for Summary Judgment, DE [28-14] (the "Ahmed Declaration"). The Paradis Declaration annexes documents used in the regular course of Amica's business as well as those showing the underlying action for which Donald seeks coverage. The Ahmed Declaration annexes copies of policies of insurance issued to the Ambrosios, renewals of those policies, as well as relevant documents from Amica's underwriting files for those policies. It also annexes documents supporting Amica's policies and procedures with respect to its policies, as relevant hereto.

Faced with Amica's Rule 56.1 Statement, the Ambrosios were required to submit their own separately numbered statements admitting or denying each of Amica's factual assertions. Unlike answers to a complaint, which generally consist of either admissions, denials, or denials of knowledge or information sufficient to form a belief as to a pleading, a Rule 56.1 statement requires more. Thus, where a statement by Amica was admitted, the Ambrosios were required to say so; where it was denied, they must have stated their position – and that position must have

been supported by citation to record evidence. Despite these requirements, the Ambrosios meet the facts set forth in Amica's detailed statement mostly with no more than unsupported denials that are devoid of citation to any evidence at all. Thus, instead of referring to record evidence in support of their positions, the Ambrosios' Rule 56.1 Statements (which are identical as to each of Amica's factual assertions) state only that they "can neither admit nor deny" all factual paragraphs of Amica's Rule 56.1 Statement. See DE [31-2] (Joann's Rule 56.1 Statement at ¶¶1-32); DE [32-1] (Donald's Rule 56.1 Statement at ¶¶1-32). In view of these statements, the Court can find only that the Ambrosios take no issue – and therefore admit to – the following facts.

III. Facts Established as to the Amica Policies

Amica began issuing both homeowners and umbrella policies of insurance (the "Policies") to the Ambrosios in 2012. The Policies were first issued when the Ambrosios were married and living at 6 Laurel Lane, Commack, New York (the "Home"). Both of the Policies were last renewed by the Ambrosios for the period August 24, 2022 through August 24, 2023. There is no question that the Ambrosios signed these last renewals, and that they received copies of the Policies. The Ambrosios do not argue otherwise.

Amica sets forth policy language relevant to the present motion in its Rule 56.1 Statement. Like all of Amica's factual statements regarding the Policies, the Ambrosios take no issue with that language. It is thus established that both Policies define the term "you" to include both insureds, i.e. both Donald and Joann. Specifically, as to insureds, the Homeowners Policy provides that, "you" and "your" refer to the "named insured" shown in the Declarations. See "DEFINITIONS", A. The Definition of "Insured" means "You . . . ." See "DEFINITIONS", B., 5., a. Similarly, the Umbrella Policy issued the Ambrosios defines "you" as the "named insured"

shown in the declarations. See "I. Definitions", "A.", 1. The definition of "Insured" means "You". See I., J., 1.

While the Policies provide coverage for claims made against the insureds for bodily injury, both are clear in their exclusion from coverage claims for bodily injury to the insureds. Thus, the Homeowners Policy contains an exclusion for bodily injury to "you or an insured". See "SECTION II – EXCLUSIONS", "F. Coverage E – Personal Liability", 6. Likewise, the Umbrella Policy precludes coverage for bodily injury or personal injury to "you . . . ." See "III. Exclusions", A., 13.

IV. The Underlying Incident and Lawsuit

On June 27, 2023, Joann was injured while visiting her daughter at the Home (the "Underlying Incident"). Joann contended, via a police report that is before this Court, that Donald pushed her and caused her to fall and injure both of her wrists. At the time of the Underlying Incident, Joann was taken from the Home to a hospital via ambulance.

Approximately one year later, on May 24, 2024, Joann commenced an action against Donald in the Supreme Court of the State of New York, County of Suffolk (the "Underlying Lawsuit"). See DE [28-2]. In the Underlying Lawsuit, Joann references the Underlying Incident and alleges that on June 27, 2023, while she was lawfully visiting and outside of the Home – which was then owned by Donald – she was caused to fall and sustain injuries. Among other things, Joann alleges that her bodily injuries were the result of negligence and an assault and battery by Donald. Joann alleges that Donald intentionally and willfully placed Joann in imminent apprehension of harm without lawful justification, and that he willfully and deliberately came into contact with Joann, causing her harm. Whatever the cause of action, the Underlying Lawsuit alleges that Joann suffered bodily injuries as a result of Donald's conduct.

V. The Ambrosios Separation, Transfer of the Home and their Divorce

While the Ambrosios have taken no issue with facts set forth by Amica regarding the terms of the Policies, and the fact that they were both named insureds as of the date of the Underlying Incident, Joann's opposition to the present motion adds additional facts. Those facts, set forth in paragraphs 33-38 of Joann's Rule 56.1 Statement state that prior to the date of the Underlying Incident, Joann ceased living at the Home. (DE [31-2] at ¶¶ 33-34.) Joann supports this statement by reference to a June 16, 2021 separation agreement between the Ambrosios (the "Separation Agreement"), pursuant to which Joann agreed to stop legally residing at the Home. (DE [31-2] at ¶ 35.) In addition to alleging a change in her residence, Joann states that shortly after the date of the Separation Agreement, on August 16, 2021, she transferred ownership of the Home to Donald. This statement is supported by the copy of a deed that is annexed to Joann's Rule 56.1 Statement. (DE [31-2] at ¶ 36.)

On May 22, 2023, Donald filed for divorce from Joann. While Joann states that the divorce was placed on "the uncontested calendar" on that date, (DE [31-2] at ¶ 37,) the document submitted in support of this assertion of fact states that the divorce matter was set down for submission before the court on September 21, 2023, and that a judgment of divorce was granted on that date. (DE [31-5].) Pursuant to the Judgment of Divorce, Joann was to remain a named insured on an automobile policy issued by Amica until the occurrence of what is referred to in the Ambrosios' divorce agreement as a "Maintenance Termination Event". (Id.) Because the Umbrella Policy also provides coverage for automobiles, pursuant to the terms of the Ambrosios' divorce, Joann was to remain a named insured on the Umbrella Policy until the occurrence of such an event.

In addition to asserting facts regarding her residence and the transfer of the Home to Donald, Joann's Rule 56.1 Statement adds the legal argument that the "policy exclusions do not apply" to Joann since they call for her to be "BOTH a 'named insured' AND "the spouse if a resident of the same household." (DE [31-2] ¶ 38) (emphasis in original but not in policy).

Amica responds to Joann's Rule 56.1 Statement first by taking issue with the fact that she fails to cite to record evidence in support of her assertion that prior to July 27, 2023, she ceased living at the Home. (DE [30-1] at ¶¶ 33-34.) As to the Separation Agreement, Amica takes issue only with a date therein, stating that the exhibit required Joann to vacate the Home by August 30, 2021. Amica also notes that the agreement does not state whether Joann actually vacated the Home as required. (DE [30-1] at ¶ 35.) Amica admits that Joann transferred ownership of the Home to Donald by way of a deed dated August 16, 2021. (DE [30-1] at ¶ 36.) With respect to the Ambrosios' divorce, Amica states, as set forth above, that the document submitted in support of this assertion of fact states that the matter was set down for submission on September 21, 2023, and that a judgment of divorce was granted on that date. (DE [30-1] at ¶ 37.) Finally, as to Joann's statement regarding policy exclusions, Amica states that this sets forth a legal argument that is not properly asserted in a Rule 56.1 statement. (DE [30-1] at ¶ 38.)

## VI. Amica's Investigation and Ultimate Denial of Coverage

Amica was made aware of the Underlying Incident on June 29, 2023 – the day it took place. Upon such notice, Amica undertook an evaluation of coverage and advised the Ambrosios of the progress of that investigation and its position with respect thereto. First, Amica issued a letter dated July 10, 2023 to the named insureds, Donald and Joann. (DE [28-5].) In that letter, Amica acknowledged notice of the Underlying Incident and its understanding that it occurred when Joann was visiting the Home, and after Joann and Donald were legally separated. Citing

questions regarding Joann's residence – which Amica referred to as the fact that "questions exist regarding whether Joann resides at the home as she is currently listed on the Homeowners Policy" – Amica stated that its investigation would continue. The July 10, 2023 letter also noted: (1) the policy provisions referred to above regarding the definitions of "you" and "your"; (2) exclusions regarding "bodily injury" that is expected or intended; and (3) that coverage for personal liability does not include bodily injury to "you or an insured." (DE [28-5] at 4.) Amica stated that it was reserving its rights with regard to coverage while continuing to investigate the matter. (Id.)

In a letter to Donald dated August 7, 2023, Amica disclaimed coverage for the Underlying Incident. That letter again cites to the policy provisions above. It disclaims coverage because: (1) the conduct with respect to the Underlying Incident did not appear to be accidental and (2) the individual claiming injury (Joann) is a named insured. As to the former reason, the letter states that the Underlying Incident alleges conduct by Donald that was intentional and, therefore, coverage was excluded. As to the latter reason, Amica noted that the Homeowners Policy specifically excludes from coverage injury to insureds – which, as of the date of the Underlying Incident – included Joann. Despite this denial, Amica stated that it would continue its investigation and would revisit the denial of coverage if necessary. (DE [28-6].)

Amica thereafter issued to Donald a letter dated November 3, 2023, reaffirming its disclaimer of liability and denial of coverage for the Underlying Incident. (DE [28-7].) This letter reaffirmed Amica's denial and stated that Amica was not covering the Underlying Incident under any policy issued to the Ambrosios – including their Homeowners, Umbrella and Automobile Policies of insurance. (DE [28-7].) Amica noted again its reasons for denial of coverage as set

forth in its prior correspondence. Joann was sent a copy of this denial letter both at the Home, and at a Lynbrook, New York address.

Amica was thereafter notified of the Underlying Lawsuit. In a letter dated August 13, 2024, Amica reaffirmed its position regarding denial of coverage. (DE [28-8].) Despite this denial, Amica has been providing a defense to Donald in connection with the Underlying Lawsuit, with reservation of its rights to deny coverage.

VII. The Present Lawsuit and the Motion for Summary Judgment

Amica commenced the present lawsuit on June 12, 2025. (DE [1].) Amica's Complaint seeks a declaration of its rights and responsibilities under the Policies. Relying on the language referenced above, Amica argues that no questions of fact preclude entry of judgment that it is required neither to defend nor indemnify Donald in connection with the Underlying Lawsuit.

While they do not quarrel with the language of the Policies, the Ambrosios argue that summary judgment must be denied. Specifically, they argue that although Joann was a named insured, she must have been residing at the Home to be within the exclusion of coverage claimed by Amica. It is argued that summary judgment must be denied because there is at least a question of fact as to Joann's residence on the date of the Underlying Incident. In support of this argument the Ambrosios cite to a provision of the Policies referencing spousal coverage. Those provisions define named insureds to also include the named insured "and the spouse if a resident of the same household." (Paradis Declaration, Ex. B (Homeowners Policy) (emphasis added); Paradis Declaration Ex. C (Umbrella Policy).)

DISCUSSION

I. Legal Principles

A. Summary Judgment

Summary judgment is properly granted if the movant shows the absence of genuine questions of material fact, and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 113 (2d Cir. 2017) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). When determining whether summary judgment is appropriate, the Court is required to "resolve all ambiguities and draw all reasonable inferences against the moving party." Tolbert v. Smith, 790 F.3d 427, 434 (2d Cir. 2015) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). A party asserting that a fact can – or cannot – be in dispute must support their position by citing to portions of the record "including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Alternatively, it may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).

B. The Duty to Defend and Indemnify and Proof as to Policy Exclusions

The Ambrosios allege that Amica has a duty to both defend and indemnify Donald in connection with the Underlying Lawsuit. All agree that the law of the State of New York applies herein. "In New York, an insurer's duty to defend is 'exceedingly broad,'" 331 W. 38th St., LLC v. Penn-Star Ins. Co., No. 25-cv-4232, 2026 WL 2349998, at *6 (S.D.N.Y. Aug. 13,

2026) (quoting Euchner-USA, Inc. v. Hartford Cas. Ins. Co., 754 F.3d 136, 140 (2d Cir. 2014), and "distinct from the duty to indemnify." Euchner-USA, 754 F.3d at 140 (citing Auto Ins. Co. of Hartford v. Cook, 7 N.Y.3d 131, 137 (2006)). While the duty to defend is determined from the allegations of the pleadings, the duty to indemnify is determined by the actual basis for the insured's liability. See Euchner-USA, 765 F.3d at 140 (citation omitted). "An insurer may refuse to defend 'only if it could be concluded as a matter of law that there is no possible factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any provision of the insurance policy.'" CGS Indus., Inc. v. Charter Oak Fire Ins. Co., 720 F.3d 71, 82 (2d Cir. 2013) (alteration in original) (quoting Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford, 64 N.Y.2d 419, 424 (N.Y. 1985)). "If any allegations in the complaint 'fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be,' an insurer must defend." Great Am. Ins. Co. v. Houlihan Lawrence, Inc., 449 F. Supp. 3d 354, 364 (S.D.N.Y. 2020) (quoting Seaboard Sur. Co. v. Gillette Co., 64 N.Y.2d 304 (N.Y. 1984)). The duty to defend continues "until it is determined with certainty that the policy does not provide coverage." Hugo Boss Fashions v. Fed. Ins. Co., 252 F.3d 608, 620 (2d Cir. 2001) (emphasis in original). An insurer's duty to indemnify is narrower and may ultimately depend upon the facts developed at trial in the matter underlying the request for coverage.

"Under New York law, the policyholder bears the initial burden of showing that the insurance policy covers the claims at issue." Commonwealth Ins. Co. v. 2610 Cropsey Dev. Corp., No. 22-CV-2512, 2025 WL 3004780, at *4 (E.D.N.Y. Oct. 27, 2025) (citing Morgan Stanley Grp. Inc. v. New England Ins., 225 F.3d 270, 276 (2d Cir. 2000)). The burden then shifts to the insurer to prove that an exclusion to coverage applies. See Ment Bros. Iron Works Co., Inc.

v. Interstate Fire & Cas. Co., 702 F.3d 118, 121 (2d Cir. 2012) (citing Consol. Edison Co. of N.Y. v. Allstate Ins., 98 N.Y. 208, 217 (2002)). Exclusions to coverage "must be specific and clear in order to be enforced." Seaboard Surety Co., 64 N.Y.2d at 311. If the insurer establishes that an exclusion applies, the burden of proof shifts back to the policyholder "to establish the applicability of an exception to the exclusion." Ment Bros., 702 F.3d at 121 (emphasis omitted).

C. Interpretation of Contracts of Insurance

Under New York law, "[a]n insurance agreement is subject to principles of contract interpretation." Deutsche Bank Nat'l Trust Co. v. Stewart Title Ins. Co., 717 F. Supp.3d 342, 350 (S.D.N.Y. 2024) (quoting Universal Am. Corp. v. Nat'l Fire Ins. Co. of Pittsburgh, Pa, 25 N.Y.3d 675, 680 (2015)). Insurance policies, "like any contract, must be interpreted according to the parties' intent." Hester v. Navigators Ins. Co., 917 F. Supp. 2d 290, 296 (S.D.N.Y. 2013) (citing cases). Further, they must "be interpreted according to common speech and consistent with the reasonable expectation of the average insured." Danaher Corp. v. Travelers Indem. Co., 414 F. Supp. 3d 436, 448 (S.D.N.Y. 2019) (citing cases). Moreover, contracts of insurance must be construed to give "a fair meaning to all of the language employed by the parties" while also leaving "no provision without force and effect.'" Danaher, 414 F. Supp. 3d at 448 (quoting In re Viking Pump, Inc., 27 N.Y.3d 244, 257 (2016)) (additional citation omitted).

Whether or not a contract is ambiguous is a threshold question of law for the Court to decide. See Parks Real Estate Purchasing Grp. v. St. Paul Fire and Marine Ins. Co., 472 F.3d 33, 42 (2d Cir. 2006) (citing cases). Contractual ambiguity exists where terms of a contract "could suggest 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'"

Id. (quoting Morgan Stanley Group, Inc., 224 F.3d at 275) (additional citation omitted). Where a court concludes that an insurance policy is ambiguous, it may consider extrinsic evidence to ascertain the parties' intent. See Reidy Contracting Grp, LLC v. Mt. Hawley Ins. Co., 167 F.4th 44, 51 (2d Cir. 2026) (citing cases). If consideration of such extrinsic evidence is inconclusive, the court may apply other principles of contract interpretation, including the rule of contra proferentem, which generally provides that ambiguities in insurance policies are resolved against the drafter and, therefore, in favor of the insured. See id. at 51-52 (citing cases).

II. The Motion is Granted

The parties all agree that Amica began issuing policies of insurance to the Ambrosios in 2012, when the Ambrosios were married and living at the Home. The last renewed policies were issued to them as named insureds, with effective dates of August 24, 2022 through August 24, 2023. There is thus no question that both Donald and Joann were both named insureds from 2012 through August 24, 2023. While it is therefore clear that the Ambrosios were named insureds on both of the Policies as of the date of the Underlying Incident, Joann has established certain questions of fact. Specifically, she raises issues as to her actual residence as of the date of the Underlying Incident, and her ownership of the Home as of that date. The Court will assume, for purposes of this motion, that Joann did not reside in the Home as of the date of the Underlying Incident. Nor did she own the Home. But these facts, however construed, do not create an ambiguity in the exclusionary language relied upon by Amica and do not, therefore, constitute issues of fact sufficient to deny summary judgment.

Amica relies on an exclusion to the Policies for claims brought by an insured. As discussed above, the clear language of the Policies define "you" to include all named insureds. Here, that means both Donald and Joann. The Policies are clear and unambiguous in the meaning

of the terms "you" and insured" and in their exclusion from coverage claims brought by an insured. In plain terms, the Policies will not cover claims brought by an insured against an insured. Because the Underlying Complaint is brought by Joann – an insured – against Donald – also, an insured – there is no question or ambiguity as to whether the claimed exclusion applies. It does.

New York law supports this holding. For example, in Charnowitz v. GEICO, 575 N.Y.S.2d 875 (1991), the Appellate Division reversed the trial court's denial of summary judgment to an insurer under similar circumstances. There, the plaintiff in the underlying lawsuit for which coverage was sought was a mother who sued her daughter when she tripped and fell at the daughter's apartment. The coverage at issue was provided (and ultimately excluded), under a renters' policy of insurance. That policy, like the Policies here, excluded coverage for bodily injury to an insured. Because the plaintiff/mother and defendant/daughter were both named insureds under the policy at issue, the exclusion applied and the insurer was entitled to summary judgment. See id. at 876.

Likewise, in Davis v. Phillips, 129 N.Y.S.3d 266, 266 (N.Y. Supreme 2020), the Court held that the insurer owed neither the duty to defend nor indemnify a plaintiff who was a named insured on the policy under which coverage was sought. As here, and in Charnowitz, the plaintiff in Davis was a named insured on the policy. It mattered not that plaintiff did not, at the time of the incident forming the basis of the underlying lawsuit, reside in the premises covered by the relevant insurance policy. What did matter, and what was determinative, was the fact that the plaintiff was a named insured under that policy. Because the policy excluded claims brought by an insured, coverage was properly excluded. See Davis, 129 N.Y.S.3d at 266.

The Ambrosios seek to create an ambiguity in the terms “you” or “insured” by relying on language that extends coverage for spouses who may not be insured, but reside at the insured premises. This is the legal argument raised in Joann’s Rule 56.1 Statement and in the Ambrosios’ opposition to the present motion. The claimed ambiguity does not exist. Rather than creating additional conditions for exclusion or a new interpretation of the words “you” or “insured”, the language relied upon creates a condition for inclusion of coverage beyond “you” or the named “insureds”. Thus, the Policies add coverage for a spouse who resides in the covered property along with the named insured. This “resident spouse” language is clear in expanding coverage to resident spouses who are not also named insureds. It would be illogical to interpret that language to add a residency requirement to the definitions of “you” and “insured” – which the Policies go to great length to define. To do so would render all of the very clear definitions of “you” and “insured” within the Policies meaningless.

The Appellate Division rejected a similar argument in Charnowitz where the plaintiff/insured sought coverage by characterizing herself not as an “insured” but as an “additional insured”. Coverage was provided for an additional insured if they were also a resident. The Appellate Division explicitly rejected that reasoning and reversed the trial court, which had held that the “insured” exclusion did not apply because the plaintiff (a named insured there) was actually an “additional insured” to whom the residency requirement applied. Finding the policy unambiguous, the Appellate Division held that the plaintiff “was a named insured under the policy and not, as the [trial] court found, an additional insured to whom the requirement of being a “resident” of [the named insured’s] household” applied. Charnowitz, 575 N.Y.S.2d at 876. Thus, the plaintiff’s residency, which the reversed trial court found “determinative” was, instead, a “complete irrelevancy.” Id. at 876.

Finally, the Court rejects the Ambrosios' argument that since Joann transferred ownership of the Home to Donald, she cannot be an insured because she lacks an insurable interest in the Home. It is clear that there is no such requirement with respect to liability policies. See, e.g., Charnowitz, 575 N.Y.S.2d 875; 4815 Development Corp. v. Harleysville Ins. Co. of N.Y., 962 N.Y.S.2d 258, 260 (2d Dep't 2013).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted in its entirety. Plaintiff is directed to submit a proposed judgment for entry to this Court within two (2) weeks of the date of this Memorandum and Opinion.

Dated: Central Islip, New York
September 28, 2026

/s/ Anne Y. Shields
Anne Y. Shields
United States Magistrate Judge